## Roth v. Roth

*Arthur L. Byrne*, for libellant.

Morrow, J., April 9, 1947.—Irene Roth, by her mother and next friend, Catherine M. Flanigan, appears as libellant. Kenneth N. Roth is named as respondent. The proceeding was instituted January 4, 1946. Paragraph 2 of the libel reads: "Libellant and respondent were married on February 15, 1945, at Uniontown, Fayette County, Pa."

The record of this marriage appears in the register's office in Book 138, page 17. In the application for license Irene Flanagan stated under oath that she was then 21 years old. In her testimony in this proceeding she says she was born August 10, 1926. Kenneth N. Roth in the same application states his age as 21 years and to the question whether he had any previous marriage or marriages he answered under oath "None".

Paragraph 8 of the libel states: "That the respondent, prior to his marriage to libellant, was lawfully

married to Faith Lucretia Hawkins in Kent County, Calif., on October 17, 1942, and although the marriage with the said Faith Lucretia Hawkins subsisted, respondent, knowingly in violation of his previous vows and the laws of the Commonwealth of Pennsylvania, entered into a second marriage with libellant at the time and place set forth in paragraph 2 of this libel."

In this case an action in divorce from the bonds of matrimony under clause (b) of section 10 of The Divorce Law of May 2, 1929, P. L. 1237, as amended by the Act of March 19, 1943, P. L. 21, 23 PS §10, seems to have been confused with an action for annulment of a marriage under the Act of July 15, 1935, P. L. 1013. Paragraph 2 and the first clause of paragraph 8 of the libel, quoted above, are in accord with the pleadings in actions in divorce from the bonds of matrimony, while the prayer is for a decree of annulment. The petition is endorsed "libel in divorce" and a "subpoena in divorce" was issued. The alias is in like form, both referring to a divorce from the bonds of matrimony, not to an annulment decree. On the other hand the sheriff's advertisement recites an annulment action. The petition of the mother in January 1947 to have the libel amended so as to designate her as guardian instead of mother and next friend refers to her original application as "a libel in divorce a. v. m."

The return day of the sheriff's publication was May 6, 1946. The master was appointed May 9, 1946. At the master's hearing held March 4, 1947, the only witnesses were Irene Roth and her mother, Catherine M. Flanigan. The mother testified that Irene was born August 10, 1926, and that she saw Kenneth Roth at Mt. Pleasant in civilian clothes about one year before the hearing. Libellant testified that his residence at the time of their marriage was Standard Shaft, Mt. Pleasant, Pa. Mt. Pleasant is in Westmoreland County. The return day of the alias subpoena was the

first Monday of April 1946. It does not appear that the Sheriff of Westmoreland County was deputized to make service thereof. Mrs. Flanigan knew nothing else of importance concerning the case.

The testimony of Irene was that she had known that Kenneth Roth had been married but that he had told her he was divorced, she taking his word for it; that about three months later when they were at Fort Sumner he explained to her that the reason she was not receiving an allotment was because his first wife was getting it, after which she wrote a letter to her mother to start annulment proceedings, and left him. We quote from her testimony (page 5) :

"Q. When you came home, did you make any effort to find out if he actually had a wife in California?

"A. No, I took his word for it.

"Q. Did you later send to California to inquire about whether he was married?

"A. Yes, we inquired about it with the provost marshal at Fort Sumner, and he got the marriage certificate to the other woman."

The certificate referred to is an "abstract of record" in the recorder's office of Kern County, Calif., showing marriage October 17, 1942, of Kenneth Norman Roth, aged 24, and Faith Lucretia Hawkins, aged 26.

We quote further from the testimony of Irene Roth (page 9) :

"Q. And do you know whether his first wife received his Government allotment?

"A. He said she did.

"Q. Did he also tell you he had never been divorced from her?

"A. He told me he was divorced from her when he married me.

"Q. But he later told you that he was not divorced from her?

"A. Yes.

"Q. When was it you say you talked with him on the telephone?

"A. It was in December of 1945.

"Q. Why did you believe that he was talking to you from Mt. Pleasant?

"A. I just thought he was because it wasn't a long distance call, and that was where he lived.

"Q. Did he at that time offer to come over to see you at your home?

"A. He asked me to come to Mt. Pleasant.

"Q. But he made no offer to come to see you?

"A. No.

"Q. Did he tell you at that time that he was divorced from his first wife?

"A. He said his divorce would be final on December 25, 1945.

"Q. Did he indicate in what State a divorce was being obtained?

"A. He said that he had received a letter from her lawyer that she was going to get a divorce in California.

"Q. And you have no way of knowing, and don't know whether that was true or not?

"A. No."

It does not appear that any effort was made to locate Faith Lucretia Roth (formerly Hawkins) of Kern County, Calif., and to take her testimony by way of depositions, or otherwise, if she is living. The only service on respondent was by advertisement. As the case now stands we have respondent's sworn statement in the register's office here that he was never married prior to his marriage of February 15, 1945, and libellant's testimony that he told her to the contrary, stating that he was divorced, later confessing in effect that he was not divorced. Such admission of guilt should have more corroboration: Morse v. Morse, 81 Pa. Superior Ct. 602. It would seem that it might

be in order to have him indicted if libellant's present contentions are correct.

### Order

And now, April 9, 1947, it is ordered that the papers in this case be returned to the files in the prothonotary's office, with leave to counsel to make application for amendment of the proceedings followed by additional testimony, or to discontinue this action without prejudice and start anew, as may be desired.